# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CC-01142-SCT

*DEVIN JONES*

*v.*

*MISSISSIPPI EMPLOYMENT SECURITY COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/19/2014 |
| TRIAL JUDGE: | HON. JAMES LAMAR ROBERTS, JR. |
| TRIAL COURT ATTORNEY: | LEANNE F. BRADY |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ALEXANDER J. SIMPSON, III |
| ATTORNEYS FOR APPELLEE: | ALBERT B. WHITE |
| | LEANNE F. BRADY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 01/07/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     After determining that Devin  Jones voluntarily quit his job without good cause, the Mississippi Department of Employment Security (MDES) denied his application for unemployment benefits.  Because the Administrative Law Judge (ALJ) relied solely on an inapplicable provision from the employee handbook in concluding that Jones had voluntarily quit his job, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2.     Jones worked for T&L Specialty Company ("T&L") as a product technician beginning on June 18, 2012, and ending on February 4, 2013.  On February 4, 2013, Jones timely

reported to work at 7:00 p.m. and performed his assigned duties until his first break at 9:00 p.m. While on his break, Jones learned that his fiancé was having complications related to her pregnancy, so he left work early. He did not notify his supervisor, Mitch Monts, that he was leaving, but he did ask his coworker, Demetrius Tatum, to tell Monts that he was leaving and why. Tatum, however, failed to relay this message, and so Monts did not learn of the emergency.

¶3.     Pursuant to a policy in T&L's employee handbook, Monts concluded that—by leaving work early without informing him within eight hours—Jones had "voluntarily quit" his job. He immediately hired a replacement for Jones. Unaware that Monts deemed him to have quit voluntarily, Jones returned to work the following day. Jones pleaded with Monts, and then with Karen Hodum from T&L's Human Resources department, insisting that he had not intended to quit his job and maintaining that he believed that, by leaving work early, he would only receive a half-point on his record.

¶4.     Jones's pleas with T&L representatives proved unsuccessful and so he filed a claim for unemployment benefits. Initially, a claims examiner concluded that Jones was ineligible to receive benefits because he had committed misconduct. Jones appealed this decision to the ALJ. After conducting a telephonic hearing, the ALJ issued a decision declaring Jones ineligible to receive unemployment benefits on the basis of "constructively voluntarily quitting" his employment without good cause.

¶5. After the ALJ issued her decision, Jones appealed to the Board of Review, but, due to a "technical glitch," the Board was under the impression that the ALJ had dismissed Jones's claim for nonparticipation and accordingly affirmed. Jones then appealed the Board's decision to the Circuit Court of Lee County. During the appeal process, MDES realized its mistake and requested that the circuit court remand the case to the Board to consider the case on the merits, and the case subsequently was remanded to the Board.

¶6. Once the circuit court had remanded this case to the Board, the Board issued an order remanding the case to the ALJ for further hearing and a decision on the merits. Following a fairly confusing sequence of events, the Board rendered a decision stating that "after careful review and consideration," it would adopt the findings of fact and opinion of the ALJ and thereby affirmed the decision.

¶7. Jones once again appealed the Board's decision to the Lee County Circuit Court, and the circuit court affirmed the Board's decision, stating that "the decision of the Board of Review of the Mississippi Department of Employment Security was supported by substantial evidence, was not arbitrary, and contains no errors of law, and that the same should be **AFFIRMED**." Jones timely filed his Notice of Appeal to this Court, asserting the following issues:

I. **Whether the circuit court erred in affirming the decision of the Board of Review and the ALJ that Jones was not entitled to receive unemployment benefits due to his having "constructively voluntarily quit" his employment.**

3

**II.** **Whether the circuit court erred in finding that the actions of the Board of Review after remand were not arbitrary and capricious.**

**III.** **Whether there was substantial evidence that Jones committed misconduct within the meaning of the unemployment law, and thus was ineligible to receive benefits.**

¶8. Finding the first issue to be dispositive, we decline to address the remaining issues.

## STANDARD OF REVIEW

¶9. This Court will not disturb an administrative agency's decision unless it is 1) *not supported by substantial evidence*, 2) is arbitrary and/or capricious, 3) beyond the scope or power granted to the agency, or 4) violated one's constitutional rights.[1] Our standard of review, therefore, is very restricted and, consequently, "an order from a Board of Review of the Employment Security Commission on the facts is conclusive . . . *if supported by substantial evidence*" absent a finding a fraud.[2]

## ANALYSIS

**Whether the Circuit Court erred in affirming the decision of the Board of Review and the Administrative Law Judge that Jones was not entitled to receive unemployment benefits due to his having "constructively voluntarily quit" his employment.**

---

[1] ***Mississippi Comm'n on Envtl. Quality v. Chickasaw Cty. Bd. of Supervisors***, 621 So. 2d 1211, 1215 (Miss. 1993) (emphasis added).

[2] ***Mississippi Emp't Sec. Comm'n v. PDN, Inc.***, 586 So. 2d 838, 840 (Miss. 1991) (emphasis added).

4

¶10. Pursuant to Mississippi unemployment law, an individual is disqualified from receiving unemployment benefits if he "left work voluntarily without good cause. . . ."[3] Whether a claimant "voluntarily quit" is a question of fact to be determined by the ALJ and Board of Review,[4] but MDES is not afforded unbridled discretion in making decisions to award or deny benefits. Its decisions must be based on *substantial evidence.*[5]

¶11. In concluding that Jones voluntarily had quit his job, the ALJ relied solely on the following provision contained within T&L's employee handbook, and then applied this provision to determine that Jones voluntarily had quit his job:

> It is the employee's responsibility to notify their supervisor if the employee will be *late* or *absent* for any reason by 8 a.m. If an employee does not contact the supervisor or another company representative within 8 hrs of an *absence*, the company will consider that the employee has voluntarily quit and termination will take place.

¶12. The ALJ ignored relevant language which preceded the paragraph quoted above. Specifically, the employee handbook also stated the following:

> **Absentee "Points System" for employees:**
>
> Points are assigned for absences of any kind as described below (other than authorized time off with pay or authorized time off without pay, as described

---

[3] Miss. Code Ann. § 71-5-513 (A)(1)(a) (Rev. 2011 ).

[4] **Mississippi Emp't Sec. Comm'n v. Fortenberry,** 193 So. 2d 142, 143 (Miss. 1966).

[5] *See* **Broome v. Mississippi Emp't Sec. Comm'n**, 921 So. 2d 334, 337 (Miss. 2006); **Johnson v. Mississippi Emp't Sec. Comm'n**, 761 So. 2d 861, 863 (Miss. 2000); **Huckabee v. Mississippi Emp't Sec. Comm'n**, 735 So. 2d 390, 394 (Miss. 1999); **Wheeler v. Arriola**, 408 So. 2d 1381, 1384 (Miss. 1982) (emphasis added).

later in this policy). Each employee begins with zero points, and points assigned remain on record for 12 consecutive months.

| | | |
|---|---|---|
| Tardy | = | ½ point |
| *Leave early* | = | ½ point |
| Reported absence | = | 1 point |

¶13. Thus, the handbook clearly distinguishes between being late (or tardy), leaving early, and being absent. By the very terms of the employee handbook—upon which the ALJ relied—Jones was required to notify his employer only if he was going to be *late* or *absent*. Further, under the terms of the policy, an employee was deemed to have "voluntarily quit" only if he failed to notify the employer within eight hours of being *absent*. The eight-hour-notification requirement did not apply to "leave early." The only provision relevant on these facts provides that "leaving early" merely results in a half-point assignment to Jones's record.

¶14. While we find the handbook language to be clear, the dissent says:

[B]ased on the plain language of these provisions, an employee who leaves work early clearly is considered absent. . .[and] see[s] no difference between an employee who fails to report to work . . . and an employee who reports to work but then leaves.

¶15. Respectfully, we find nothing in the handbook's language that supports this proposition. To the contrary, the handbook sets out a clear distinction between the terms "tardy," "leave early," and "absence." As further support, we note that there would be no need for the distinction if, as the dissent has concluded, they all mean the same thing.

¶16. The dissent also makes much of the fact that, at the telephonic hearing held by the ALJ, the T&L representatives maintained that **they believed** "leave early" and "absent" to be "one and the same for purposes of its attendance policy." Even if this is true, it matters not

what these T&L employees believed these words to mean, because the plain language of the policy directly contradicts any such notion that the two terms mean the same thing.

¶17. Finally, the dissent asserts that Jones bore the burden of proof to establish that he had good cause for leaving work. We agree. But the error we find is not the weight of the evidence, but rather the ALJ's incorrect determination that Jones "voluntarily quit" his job. On remand, Jones certainly will have the burden of proving that he had good cause for leaving work early.

¶18. Within the "findings of fact" portion of her decision, the ALJ—relying on her incorrect interpretation of the handbook provision—found the following:

> The claimant constructively quit on February 5, 2013, when he left work during a break and did not return or notify the employer. The employer policy requires employees to notify their supervisor if absent, tardy, or leave work early. If a person leaves work without notifying the supervisor and makes no attempt to call for eight (8) hours, the employer considers the employee to have quit.

¶19. Nowhere does the ALJ conclude that Jones was being untruthful about his reason for leaving work early, nor is there any indication that the ALJ considered Jones's fiancee's pregnancy complications to be less than good cause. Thus, the dissent's concern for the burden of proof is unfounded.

¶20. On the day in question, Jones was not tardy, nor was he absent, and so the policy requiring him to notify his employer within eight hours or be deemed to have quit voluntarily, did not apply. Jones's argument that he believed he would receive only a half-point in his record for leaving early that day is completely consistent with the plain language of  the

policy included within the handbook. Because the "voluntary quit" provision did not apply to Jones's conduct on these facts, the ALJ erred in relying exclusively on it to conclude that Jones voluntarily had quit his job.

## CONCLUSION

¶21.   Because the ALJ relied solely on an inapplicable provision from the employee handbook in concluding that Jones voluntarily had quit his job, we find that MDES's decision in denying Jones unemployment benefits was not supported by substantial evidence. Accordingly, we must reverse the judgment of the Lee County Circuit Court and remand this case for a proper determination of whether Jones is eligible for unemployment benefits.

¶22.   **REVERSED AND REMANDED**.

**LAMAR AND COLEMAN, JJ., CONCUR.  KITCHENS, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND RANDOLPH, P.J.  MAXWELL, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, CONCURRING IN RESULT ONLY:**

¶23.   I agree with the plurality's determination that Devin Jones did not quit his job voluntarily and without good cause for the purpose of Section 71-5-513(A)(1)(a) of the Mississippi Code. However, because the plurality relies upon a misinterpretation of the T&L Specialty Company employee handbook in reaching this conclusion, I respectfully concur only in the result.

¶24.   Devin Jones was employed by T&L Specialty Company as a production technician from June 18, 2012, until February 4, 2013. On February 4, 2013, Jones reported to work on

8

time at 7:00 p.m. and performed his assigned duties until his first break at 9:00 p.m. During that break, Jones learned that his pregnant girlfriend was ill. At 9:17 p.m., Jones left work, asking a coworker to explain the situation to their supervisor, Mitch Monts. The coworker promised to inform the supervisor, and Jones left the workplace to take care of his pregnant girlfriend. The coworker apparently did not inform Monts about Jones's absence. However, Monts was aware that Jones's girlfriend was experiencing a complicated pregnancy.

¶25. On February 5, 2013, Jones was told by a manager at Specialty that Jones had quit his job the night before because he had left his post without first notifying his supervisor. Jones showed up to work his shift that night, but Specialty had replaced him. On February 20, 2013, Jones filed an application for unemployment benefits with the Mississippi Employment Security Commission (MESC). The MESC claims examiner found that Jones had been discharged for leaving work without authorization, which constituted misconduct. After holding a telephonic hearing, an MESC administrative law judge (ALJ) ruled that Jones was ineligible for unemployment benefits because he constructively had quit his job without good cause. The ALJ's determination was affirmed on appeal by the MESC Board of Review and by the Circuit Court of Lee County.

¶26. It is well settled that judicial review of a Mississippi Employment Security Commission Board's ruling is limited. *Piggly Wiggly of Bay Springs & Dixieland Food Stores, Inc. v. Miss. Emp't Sec. Comm'n*, 465 So. 2d 1062, 1064-65 (Miss. 1985). The Mississippi Legislature has determined that: "In any judicial proceedings . . . the findings of

the Board . . . as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Miss. Code Ann. § 71-5-531 (Rev. 2011). In *Melody Manor, Inc. v. McLeod*, 511 So. 2d 1383 (Miss. 1987), this Court held: "The principle is well settled that an Order of the Board of Review on the facts is conclusive on the lower court, if supported by substantial evidence and if absent fraud." Substantial evidence requires more than a "mere scintilla" of evidence, *Johnson v. Ferguson*, 435 So. 2d 1191, 1195 (Miss. 1983), but it does not rise to the level of "a preponderance of the evidence." *Babcock & Wilcox Co. v. McClain*, 149 So. 2d 523, 523-24 (Miss. 1963); *accord Delta CMI v. Speck*, 586 So. 2d 768, 773 (Miss. 1991).

¶27. Unemployed individuals are disqualified from receiving benefits under two circumstances: (1) the employee "left work voluntarily without good cause" or (2) the employee "was discharged for misconduct connected with his work." Miss. Code Ann. § 71-5-513(A)(1)(a)-(b) (Rev. 2011). "The burden of proof of good cause for leaving work shall be on the claimant, and the burden of proof of misconduct shall be on the employer." Miss. Code Ann. § 71-5-513(A)(1)(c) (Rev. 2011).

¶28. Here, it is apparent that there is not substantial evidence supporting the ALJ's determination that Jones "left work voluntarily without good cause." The ALJ found that Specialty's employee handbook "requires employees to notify their supervisor if [they are] absent, tardy, or leave work early. If a person leaves work without notifying the supervisor and makes no attempt to call for eight (8) hours, the employer considers the employee to have

10

quit." However, this is not an accurate interpretation of the Specialty employee handbook.

The handbook provides:

> It is the employee's responsibility to notify their supervisor if the employee will be late or absent for any reason by 8 a.m. If an employee does not contact the supervisor *or another company representative* within 8 hrs of an absence, the company will consider that the employee has voluntarily quit and termination will take place.

(Emphasis added.) Here, Jones, by notifying his coworker that he was leaving work, substantially complied with the requirements of the employee handbook that employees "contact the supervisor or another company representative within 8 hrs of an absence." Not only did Jones substantially comply with company policy, but the record also is devoid of any evidence that Jones intended to quit his job by leaving to take care of his pregnant girlfriend. In fact, he showed up to work at Specialty, on time, the very next night.

¶29.    I disagree with the plurality's conclusion that, "[o]n the day in question, Jones was not tardy, nor was he absent." Plur. Op. ¶ 20.  The handbook requires that an employee "notify [his or her] supervisor if the employee will be late or absent for any reason." Oxford English Dictionary defines *absent* as "the state of being away from a place or person." *Absent*, Compact Oxford English Dictionary (2d ed. 2000).  In leaving his place of work at 9:17 p.m. and in failing to return to complete his shift thereafter, Jones was "absent" from his workplace within the common meaning of the term *absent*.

¶30.    Furthermore, even if there were substantial evidence supporting the ALJ's conclusion that Jones "voluntarily quit" his position at Specialty by leaving work early, the ALJ and the

11

plurality misapply the relevant unemployment benefits statute. In pertinent part, Section 71-5-513(A)(1)(a) of the Mississippi Code provides:

¶31. A. An individual shall be disqualified for benefits:

(1)(a) For the week, or fraction thereof, which immediately follows the day on which he left work voluntarily without good cause, if so found by the department, and for each week thereafter until he has earned remuneration for personal services performed for an employer, as in this chapter defined, equal to not less than eight (8) times his weekly benefit amount, as determined in each case; however, marital, filial and domestic circumstances and obligations shall not be deemed good cause within the meaning of this subsection. *Pregnancy shall not be deemed to be a marital, filial or domestic circumstance for the purpose of this subsection*.

Miss. Code Ann. § 71-5-513(A)(1)(a) (Rev. 2011) (emphasis added). Because Jones "left work" for the purpose of caring for his pregnant girlfriend, the relevant statute's express language provides that he is not disqualified from receiving unemployment benefits.

¶32. In sum, no evidence in the record supports the ALJ's conclusion that Jones voluntarily left work without good cause. By notifying his coworker that he was leaving work to care for his pregnant girlfriend and by asking his coworker to explain the reason he left work to his supervisor, Jones substantially complied with the provisions of the employee handbook. Furthermore, even if there were evidence in the record that Jones left work voluntarily, Section 71-5-513(A)(1)(a) of the Mississippi Code provides that pregnancy is not a marital, filial, or domestic circumstance that is outside the meaning of the term *good cause* as contemplated by the statute. Because, however, the plurality relies upon a misinterpretation

12

of the T&L Specialty Company employee handbook in reaching this conclusion, I respectfully concur only in the result.

**KING, J., JOINS THIS OPINION.**

**PIERCE, JUSTICE, DISSENTING:**

¶33.    Respectfully, I dissent from the plurality's decision to reverse the Mississippi Department of Employment Security's (MDES) decision, denying Devin Jones unemployment compensation.

¶34.    I disagree with the plurality that the Administrative Law Judge (ALJ) relied on an inapplicable provision from the employee handbook and failed to consider language contained in another provision.

¶35.    As noted by the plurality, the employee handbook contains the following provision(s):

**Absentee "Points System" for employees:**

Points are assigned for absences of any kind as described below (other than authorized time off with pay or authorized time off without pay, as described later in this police).  Each employee begins with zero points, and points assigned remain on record for 12 consecutive months.

Tardy                      =              ½ point
*Leave early*            =              ½ point
Reported absence    =              1 point

It is the employee's responsibility to notify their supervisor if the employee will be late or absent for any reason by 8 a.m.  If an employee does not contact the supervisor or another company representative within 8 hrs of an absence, the company will consider that the employee has voluntarily quit and termination will take place.

¶36.   Based on the plain language of these provisions, an employee who leaves work early clearly is considered absent.  I see no difference between an employee who fails to report to work and does not contact the employer within eight hours of the absence and an employee who reports to work but then leaves the workplace without informing the employer within eight hours of absenting himself from the workplace.  According to the record, the ALJ asked the employer, T&L Specialty Company, Inc. (Specialty), at the hearing held in this matter about both provisions related above.  Speciality responded that it considers such conduct as one and the same for purposes of its attendance policy.

¶37.   The plurality finds nothing in the handbook that supports the interpretation that there is no difference between an employee who fails to report to work and an employee who reports to work but then leaves.  Respectfully, this is wrong.  First, the first sentence of the "point system" provision says: "Points are assigned for *absences of any kind as described below* . . . [i.e., tardy, leave early, and reported absence]."  (Emphasis added.)  Second, as the human resources officer for Speciality explained, the second provision is read in conjunction with the first.  The human resources officer testified that, "[t]he points mentioned are for tardy, a reported absence[;] [t]here is a half point for leaving early, but without notification within eight hours of that absence of leaving early, then that is a voluntary quit. . . .  That coincides with the reporting absence policy that is in conjunction with that attendance point system."

14

¶38. This is common sense. The plurality fails to recognize this because the plurality is hung up on the fact that an employee who leaves work early incurs only a half point on his record. What the plurality fails to take into consideration is this: Why does a reported absence constitute a one-point assessment, but leaving work early constitutes only a half-point? This is because proper notification to Specialty is implicit in both instances, as the human resources officer testified. Under the plurality's mistaken reading of the handbook, an employee who reports to work, clocks in, and then immediately leaves without clocking out is treated more graciously than the employee who notifies Speciality before his or her shift begins, that he or she will be absent. I point out that the record shows that Speciality utilizes a time clock, and Jones admitted in his testimony that he did not clock out when he left work the evening in question. According to Jones, he may have asked Tatum to clock him out, but Jones was unsure.

¶39. Further, Jones bore the burden of proof in this case that he had good cause for leaving work. Miss. Code Ann. § 71-5-513(A)(1)(c) (Rev. 2011). Jones was the only person who testified on his behalf, and the only factual evidence presented as to why Jones left and that he notified a coworker, came from Jones's uncorroborated testimony. Jones's supervisor, Mich Monts, and Specialty's human resources representative, Karen Hoodum, both testified that they did not know why Jones had left that evening and did not return. MDES was well within its discretion in this instance to reject Jones's testimony. *See Jackson Cty. Bd. of Supervisors v. Miss. Emp't Comm'n*, 129 So. 3d 178, 183 (Miss. 2013) ("It is the role of the

15

agency, in its expertise, to determine the weight of the evidence and the credibility of the witnesses.").

¶40.　Sufficient evidence was presented to support MDES's decision that Jones was ineligible for unemployment benefits.  Accordingly, I would affirm the judgment of the Lee County Circuit Court.

**WALLER, C.J., AND RANDOLPH, P.J., JOIN THIS OPINION.**